UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v-<br><br>RAYMOND JACKSON,<br><br>       Defendant. | 96 Cr. 515 (LAP) |
| RAYMOND JACKSON,<br><br>       Plaintiff<br><br>-v-<br><br>UNITED STATES OF AMERICA,<br><br>       Defendant. | 16 Civ. 4792 (LAP) |

**GOVERNMENT'S MEMORANDUM OF LAW IN
OPPOSITION TO RAYMOND JACKSON'S MOTION UNDER 28 U.S.C. § 2255**

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Stephanie Lake
Assistant United States Attorney
   *Of Counsel*

## INTRODUCTION

On April 7, 1999, in the midst of trial, Raymond Jackson pled guilty to three counts relating to his participation in a violent racketeering enterprise known as the "Preacher Crew." For those crimes, Jackson was sentenced to 420 months' imprisonment. Jackson has now filed a motion pursuant to 28 U.S.C. § 2255 seeking to vacate two of those convictions in light of the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), interpreting 18 U.S.C. § 924(c). Specifically, Jackson asks this Court to overturn his convictions on Counts 77 and 80, each charging separate violations of 18 U.S.C. § 924(c) predicated on both murder and conspiracy to commit murder. Jackson is not entitled to vacatur of either of these convictions. While the Government agrees that the predicate offense of conspiracy to commit murder is no longer valid following the Supreme Court's decision in *Davis*, the murder predicate remains a valid basis for the defendant's § 924(c) convictions.

## BACKGROUND

A superseding indictment (the "Indictment") was returned on December 17, 1997, charging Jackson and eleven co-defendants with various offenses relating to their participation in the Preacher Crew. Jackson, specifically, was charged in thirteen counts, as follows:

- Count 1 – Racketeering, in violation of 18 U.S.C. § 1962(c)

- Count 2 – Racketeering conspiracy, in violation of 18 U.S.C. § 1962(d)

- Count 20 – Conspiracy to murder George Ford, in violation of 18 U.S.C. § 1959(a)(5)

- Count 21 – Murder and aiding and abetting the murder of George Ford, in violation of 18 U.S.C. §§ 1959(a)(1) and 2

1

- Count 26 – Conspiracy to murder Greg Hawkins, in violation of 18 U.S.C. § 1959(a)(5)

- Count 27 – Murder and aiding and abetting the murder of Greg Hawkins, in violation of 18 U.S.C. §§ 1959(a)(1) and 2

- Count 31 – Conspiracy to murder Larry Jones, in violation of 18 U.S.C. § 1959(a)(5)

- Count 34 – Conspiracy to murder Sheila Berry, in violation of 18 U.S.C. § 1959(a)(5)

- Count 35 – Murder and aiding and abetting the murder of Sheila Berry, in violation of 18 U.S.C. §§ 1959(a)(1) and 2

- Count 74 – Use and carrying of a firearm during a crime of violence, *to wit*, the murder of and conspiracy to murder George Ford, as charged in Racketeering Act 11 of Counts 1 and 2 and Counts 20 and 21, in violation of 18 U.S.C. §§ 924(c) and 2

- Count 77 – Use and carrying of a firearm during a crime of violence, *to wit*, the murder of and conspiracy to murder Greg Hawkins, as charged in Racketeering Act 14 of Counts 1 and 2 and Counts 26 and 27, in violation of 18 U.S.C. §§ 924(c) and 2

- County 80 – Use and carrying of a firearm during a crime of violence, *to wit*, the conspiracy to murder and murder of Sheila Berry, as charged in Racketeering Act 19 of Counts 1 and 2 and Counts 34 and 35, in violation of 18 U.S.C. §§ 924(c) and 2

- Count 83 – Accessory after the fact, *to wit*, assisting others in dismembering murder victim Anthony Boatwright, in violation of 18 U.S.C. § 3

Trial against Jackson began on April 5, 1999. Two days into trial, on April 7, 1999, Jackson entered a guilty plea to Counts 20, 77, and 80 pursuant to a plea agreement with the Government. During the plea proceeding, and as is relevant here, the Government proffered the evidence it would introduce at trial to prove the defendant's guilt on Counts 77 and 80, as follows:

> As to the murder of Greg Hawkins [Count 77], the government's evidence shows that the defendant shot Greg Hawkins to death in retaliation for Hawkins having participated in the murder of a friend of the Preacher Crew, Jamel Merritt. As to the murder of Sheila Berry [Count 80], the government's evidence would show that the defendant, together with other members of the Preacher Crew, took Sheila Berry to an apartment on Bradhurst Avenue in Manhattan and that she was shot to death

in that apartment. The defendant participated in that murder and it was done in order for the Preacher Crew to avoid a drug debt.

(Plea Tr.[1] at 413:13-23.) The defendant admitted, with respect to Count Seventy-Seven, that he "went and got the gun and was present when [Greg Hawkins] was killed," and affirmed that he "understood that the gun was going to be used in connection with killing" Hawkins. (*Id.* at 416:4-13.) Similarly, with respect to Count Eighty, the defendant admitted that he "went and got the gun," knowing it would be used to kill Sheila Berry, and went to the apartment where she was killed. (*Id.* at 416:20-417:9.) Pursuant to the plea agreement, the Government agreed to move to dismiss at sentencing the remaining counts against Jackson. (*See* Plea Agreement at 2.) The plea agreement also contained a stipulated Guidelines sentence of 420 months' imprisonment, which was the statutory maximum sentence. (*Id.* at 3.)

The pre-sentence report ("PSR") was prepared on June 2, 1999, and provided additional details regarding Jackson's criminal conduct. The PSR set out in detail Jackson's role in shooting Hawkins to death, as is relevant to Count 77.

> JOHN CUFF ordered that Greg Hawkins be murdered in retaliation for Hawkins having participated in the murder of Jamel Merritt, one of CUFF's associates and a close friend of JACKSON's. JACKSON and Merritt were together in Wilmington, Delaware, along with other members of the Preacher Crew, for the purpose of selling CUFF's drugs, and JACKSON and Merritt took their oaths to become members of the Preacher Crew on that same day. CUFF gave directions to Crew members to kill Hawkins and two of his associates on sight. On the day of the murder JACKSON was riding around in CUFF's car with two other Crew members, DARRYL HASKINS and CURTIS MEDLEY. While they were driving down

---

[1] The plea transcript has been provided to the Court as an attachment to the Defense Memorandum ("Def. Mem.") at Docket Entry 683, Exhibit A. The plea agreement has been provided to the Court as Exhibit B to the Defense Memorandum. The PSR will be provided as a sealed attachment to this memorandum.

3

> Edgecombe A venue in Manhattan, they spotted Greg Hawkins. They then drove to where CUFF was standing on Bradhurst Avenue, and JACKSON obtained a gun from Patrick Caple. JACKSON, MEDLEY and HASKINS then got into the car of another Crew member, JOHN PORTER, and proceeded to Edgecombe Avenue. MEDLEY, who was driving, stopped the car near Hawkins and JACKSON jumped out of the car and started shooting at Hawkins. Hawkins tried to run away and JACKSON ran after him and, after Hawkins fell to the ground, JACKSON stood over him and shot him numerous times in the head.

(PSR ¶ 27.)

With respect to Berry's murder, the PSR described Jackson's role in obtaining the gun used to kill her and disposing of her body.

> Sheila Berry was the girlfriend of a Crew member and she transported drugs for the Crew from 2075 Grand Concourse to their drug spot on Davidson Avenue; she was also addicted to "crack" cocaine. CUFF arranged for Berry to pick up drugs from one of the Crew's suppliers, and then agreed with other members to murder Berry in order to avoid having to pay the supplier. They would then tell the supplier that Berry had stolen the drugs by running away with them. CUFF, along with JACKSON and LEROY ECHOLS, took Berry to an apartment on Bradhurst Avenue and shot her once in the head. JACKSON admitted during his guilty plea that he had obtained the gun for that murder. JACKSON helped dispose of her body in an adjoining abandoned building; Berry's body was not discovered until January 1997.

(PSR ¶ 28.)

On June 29, 1999, the Court sentenced Jackson to 120 months' imprisonment on Count 20, 60 months' imprisonment on Count 77, and 240 months' imprisonment on Count 80, each to run consecutively to one another, for a total term of 420 months' imprisonment. (Dkt. 465.) Jackson did not file a direct appeal challenging his conviction or sentence.

On May 10, 2001, Jackson filed a motion to vacate under 28 U.S.C. § 2255, principally arguing that trial counsel was ineffective for failing to file a direct appeal, which motion the Court denied on August 26, 2002. Among the substantive arguments Jackson wished to advance was a

claim that "his guilty plea to the firearms charges is somehow invalid because there is no corresponding plea or finding of guilt as to the murders themselves." *Jackson v. United States*, 01 Civ. 3967 (MBM), 2002 WL 1968328, at *2 (S.D.N.Y. Aug. 26, 2002). In rejecting this argument, the Court noted that "Jackson's conduct as he described it could also have resulted in conviction for either conspiracy to commit murder, or—on an aiding and abetting theory—murder. That there was no such conviction means only that he was fortunate, not that he did not violate 18 U.S.C. § 924(c)." *Id.*

On September 26, 2002, Jackson appealed the Court's August 26, 2002 denial. (Dkt. 559.) On January 10, 2003, the Second Circuit dismissed the appeal. (Dkt. 567.) On each May 12, 2006 and March 31, 2009, the Second Circuit denied Jackson's petitions requesting leave to file successive motions under Section 2255. (Dkts. 586, 591.) On October 4, 2011, Jackson moved for a reduction in sentence pursuant to 18 U.S.C. § 3582. (Dkt. 592.) On June 15, 2012, the Court denied Jackson's motion. (Dkt. 597.) On June 29, 2012, Jackson appealed the Court's denial. (Dkt. 598.) On January 7, 2014, the Second Circuit affirmed this Court's denial. (Dkt. 603.) Finally, on June 21, 2016, Jackson "placeholder" motion to vacate under § 2255 following the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which motion was stayed. (Dkts. 617, 624.) On August 26, 2020, the Second Circuit granted Jackson leave to file a successive motion under § 2255 in light of *Johnson* and *Davis*. (Dkt. 674.) On October 13, 2020, Jackson filed his motion requesting vacatur of Counts 77 and 80 in light of *Davis*. (Dkt. 683.) For the reasons set forth below, Jackson's motion should be denied.

5

## ARGUMENT

### I.      Jackson Is Not Entitled To Vacatur of Any Count of Conviction

#### A. The Supreme Court's Decision in *United States v. Davis*

At the time of Jackson's plea, § 924(c) provided that anyone who used or carried a firearm "during and in relation to any crime of violence or drug trafficking crime" would be subject to specified enhanced penalties. Section 924(c)(3), in turn, defined "crime of violence" as a "felony offense" that either "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," § 924(c)(3)(A) or "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." § 924(c)(3)(B). The first of these definitions is known as the "physical force clause," and the second as the "residual clause."

In *United States v. Davis*, 139 S. Ct. 2319 (2019), the Supreme Court struck down the residual clause of § 924(c) as a unconstitutionally vague, leaving only the physical force clause to define a "crime of violence." Following *Davis*, the Government has consented to vacate § 924(c) convictions where they rest solely on "crimes of violence" as defined by the residual clause. The Government agrees that certain offenses, including conspiracy to murder, do not qualify as crimes of violence under the physical force clause. But because Jackson's § 924(c) convictions are predicated on at least one "crime of violence" as defined by the physical force clause of § 924(c), *i.e.*, murder, his convictions remain valid.

6

### B. Counts 77 and 80 Each Charge Jackson with the Predicate Offenses of Murder and Conspiracy to Commit Murder

Jackson's §924(c) convictions on Counts 77 and 80 each rest on the predicate offenses of murder and conspiracy to commit murder. While conspiracy to commit murder is a "crime of violence" as defined by the residual clause and thus is no longer valid, the murder predicate remains a valid "crime of violence" under the physical force clause. That is, at least one predicate offense remains valid even after *Davis*. And because the Second Circuit has explained that just one valid predicate is necessary to sustain a conviction under § 924(c), Jackson's § 924(c) convictions on Counts 77 and 80 remain valid as well.

In *United States v. Walker*, 789 F. App'x 241 (2d Cir. 2019), the Second Circuit rejected the defendants' challenges to a dual-predicated § 924(c) count because the "conviction of each Defendant rested on convictions for both conspiracy and substantive Hobbs Act robbery as the predicate crimes of violence." *Id.* at 244-45. Likewise in *Cooper v. United States*, No. 16-1925, the Second Circuit denied leave to file a second or successive § 2255 motion challenging § 924(c) and (j) convictions under *Johnson* and *Dimaya* because the trial record demonstrated that "[a]lthough Petitioner's § 924(c) and (j) convictions were predicated on several crimes of violence, they also were predicated on drug trafficking crimes" and, therefore, "[b]ecause Petitioner's predicate drug trafficking crimes were not affected by *Johnson* or *Dimaya*, his convictions under § 924(c) and (j) remain valid." *Cooper*, No. 16-1925, Order at 1 (Feb. 20, 2019) (Dkt. 40); *see also United States v. Fuller*, No. 16-1888, Order at 1-2 (2d Cir. Feb. 20, 2019) (Dkt. 51).

Jackson incorrectly claims that the murder predicate applies only to his conviction on Count 80, and argues that the sole predicate underlying his conviction on Count 77 was conspiracy

7

to commit murder.  (Def. Mem. at 7-9.)  This is clearly contradicted by the Indictment, which charges Jackson with using and carrying a firearm in connection with *both* murder and conspiracy to commit murder for each Count 77 and Count 80.  Count 77 and Count 80 each refer to the murders as charged in Racketeering Acts 14 and 19 of Counts 1 and 2 and as charged in Counts 27 and 35, respectively.  Racketeering Act 14 charged that, on or about April 4, 1994, Jackson and others "unlawfully, intentionally, and knowingly murdered and aided and abetted the murder of Greg Hawkins, a/k/a 'Black Greg,' in violation of New York state Penal Law."  (Ind. ¶ 25(b).)  Racketeering Act Nineteen charged that, on or about March 13, 1995, Jackson and others "unlawfully, intentionally, and knowingly murdered and aided and abetted the murder of Sheila Berry, in violation of New York State Penal Law."  (Ind. ¶ 30(b).)  Counts 27 and 35 charged Jackson with the murders in aid of racketeering of Hawkins and Berry, in violation of 18 U.S.C. § 1959(a)(1) and 2.

The plea proceeding similarly contradicts this claim.  The defendant allocated, and the Government proffered uncontested evidence, of the defendant's direct involvement in the two murders.  Indeed, the Court's opinion in *Jackson*, 2002 WL 1968328, correctly determined that the defendant's allocution provided a sufficient basis to conclude that Jackson had committed the substantive murders that served as predicates for Counts 77 and 80.  *See id.* at *2 ("Jackson's conduct as he described it [during the plea allocation] could also have resulted in conviction for either conspiracy to commit murder, or—on an aiding and abetting theory—murder.").[2]  The PSR

---

[2] It is well settled that one who aids or abets another in committing a crime is liable as a principal in committing that crime. *See* 18 U.S.C. § 2(a) ("Whoever commits an offense against the United

8

further contains a detailed factual description of the defendant's role in shooting to death Greg Hawkins, the victim referenced in Count 77. The substantive murder predicate therefore unquestionably applies to both Count 77 and Count 80.

### C. Murder Is a Valid Predicate "Crime Of Violence" Under the Physical Force Clause of § 924(c)

Case law before and after *Davis* is clear that murder and attempted murder are crimes of violence under the physical force clause of § 924(c). For that reason, Jackson's § 924(c) convictions on Counts 77 and 80—each predicated on murder—remain valid.[3] *See United States v. Sierra*, 782 F. App'x 16, 20-21 (2d Cir. Aug. 1, 2019) (rejecting a challenge to convictions under § 924(c) and § 924(j) predicated on murders in aid of racketeering and assault and attempted

---

States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."). Whether Jackson was convicted of a valid predicate based on an aiding-and-abetting theory or as a principal, he is equally culpable in either instance. And in either instance, the predicate offense may sustain a § 924(c) conviction. *See, e.g.*, *Boykin v. United States*, No. 16 CV 4185 (CM), 2020 WL 774293, at *9 (S.D.N.Y. Feb. 18, 2020) ("[S]ince . . . murder is a categorical crime of violence, aiding and abetting it is no less a categorical crime of violence."); *cf. United States v. Joyner*, 313 F.3d 40, 47 (2d Cir. 2002)("There is no disagreement among the circuits that aiding and abetting the violation of federal narcotics laws may serve as a predicate offense in support of a CCE conviction.").

[3] Because the predicate offenses in Racketeering Acts 14 and 19 and Counts 27 and 35 charged Jackson with intentional murder, the relevant state law is N.Y. Penal Law § 125.25[1]. *Cf. Boykin*, 2020 WL 774293, at *6 ("While murder is defined by federal law, see 18 U.S.C. § 1959(a)(1), what the federal statute criminalizes is behavior that qualifies as "murder" under state law."). Section 125.25[1] provides that "a person is guilty of murder in the second degree when[] [w]ith intent to cause the death of another person, he causes the death of such person or of a third person." N.Y. Penal Law § 125.25[1]. *See also* N.Y. Penal Law § 20.00 ("When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct.").

9

murder in aid of racketeering because both attempted murder and murder are crimes of violence); *United States v. Praddy*, 729 F. App'x 21, 24 (2d Cir. 2018) (finding attempted murder a crime of violence in the § 924(c) context because "attempted murder is a crime unmistakably involving an attempted use . . . of physical force") (internal quotations omitted); *see also Beltran v. United States,* No. 16 Civ. 4452 (PAE), 11 Cr. 1032 (PAE), 2020 U.S. Dist. LEXIS 21042, at *4-5 (S.D.N.Y. Feb. 6, 2020) (denying motion for reconsideration of the denial of a § 2255 motion submitted under *Johnson* and *Davis* in part because "the Court rejects, on its merits, [the defendant's] argument that a murder in aid of racketeering in violation of § 1959(a)(1) is not, measured by its elements, a crime of violence.").

Jackson insists that murder cannot be considered a crime of violence within the meaning of § 924(c) because it may be committed by "recklessly and by inaction." (Def. Mem. at 9.) In *United States v. Sierra*, the Second Circuit rejected precisely that claim. 782 F. App'x at 20.[4] The defendant in that case argued that "murder can be committed by omission, and therefore that the use of force is not an element of his murder convictions." Unpersuaded, the Court noted that it was "self-evident that under New York law 'attempted murder is a crime unmistakably involving

---

[4] The summary order in *Sierra* decided a purely legal issue. Where that is the case, summary orders "should be given more weight." *See, e.g.*, *CSL Silicones Inc. v. Midsun Group Inc.*, 14 Civ. 1897 (CSH), 2016 WL 1060189, *7 n.8 (D. Conn. Mar. 15, 2016) (Haight, J.) ("Implicit in that rationale is that summary orders should be given more weight, where, as here, they address a question of law."). Even more so when they resolve the precise legal argument advanced by a party. As the District of Connecticut observed, "it would take a certain *chutzpah* to issue a ruling directly contrary to a ruling from the Court of Appeals where the panel addressed and resolved the precise legal question at hand. In fact, the Second Circuit itself has repeatedly directed that denying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases." *Id.* (internal quotations and alterations omitted).

an attempted use of physical force.'" *Id.* (quoting *Praddy*, 729 F. App'x at 24) (internal quotation marks omitted). From there, the Court explained, "[i]t follows that murder is a crime involving the use of such force." *Id.* Other courts in this District have reached the same conclusion. For example, in *Boykin v. United States*, Chief Judge McMahon considered the same arguments advanced here and affirmed that murder in violation of New York law remains a "crime of violence" within the meaning of § 924(c), after emphasizing that "manslaughter . . . is not the same crime as murder." 2020 WL 774293, at *7 (S.D.N.Y. Feb. 18, 2020). In reaching this conclusion, Chief Judge McMahon reasoned that "[g]iven the Supreme Court's conclusion that the 'intentional causation of bodily injury necessarily involves the use of physical force,' it is impossible not to conclude that the intentional causation of death, as required by N.Y. Penal Law § 125.25(1), necessarily involves the use of physical force." *Id.* at *8 (internal citations omitted).

Jackson has not cited a single case holding that murder, whether under § 1959(a)(1) or New York state law, is not a "crime of violence." Indeed, courts in this Circuit, consistent with the *Boykin* decision, have concluded the opposite—that New York Penal Law § 125.25(1) *is* a "crime of violence." *Rizzuto v. United States*, 98 Cr. 581 (ERK), 16 Civ. 3557 (ERK), 2019 WL 3219156, at *3 (E.D.N.Y. July 17, 2019) (Korman, J.) ("Section 125.25(1) plainly falls within the definition of a 'crime of violence' laid out in Section 924(c)(3)(A)."); *see also Abrue v. United States*, No. 16CV5052, 2020 WL 4570338, at *4 (S.D.N.Y. Aug. 7, 2020) ("Abrue offers no authority—before or after *Davis*—tending to undermine the Second Circuit's conclusions in those summary orders. Since Abrue's conviction for attempted murder in aid of racketeering is categorically a 'crime of violence' under § 924's force clause, his petition fails.").

11

Rather than cite any authority addressing whether intentional murder constitutes a "crime of violence," Jackson encourages this Court to extend the Second Circuit's decision in *United States v. Scott*, 954 F.3d 74 (2d Cir. 2020), *pet. for reh'g en banc granted* (July 10, 2020), which addressed manslaughter, to reach a result the Second Circuit expressly rejected in *Sierra*.[5] The Court should decline this invitation and reach the same conclusion that the Second Circuit and other courts in this district consistently have reached: that murder is a crime of violence under the physical force clause of § 924(c).

### D. Jackson Has Procedurally Defaulted on This Claim

Jackson's claim—that his § 924(c) conviction should be vacated because neither conspiracy to commit murder nor murder in aid of racketeering is a "crime of violence" under the physical force clause of § 924(c)—has been procedurally defaulted because he never advanced it on direct appeal. Indeed, Jackson did not appeal his conviction. To overcome the default and have his claim considered on the merits, Jackson must demonstrate either cause and prejudice or actual innocence. He can demonstrate neither.

As a threshold matter, Jackson acknowledges that he did not appeal his final judgment on any ground. (Def. Mem. at 14). It is well settled that § 2255 is not designed as a substitute for a direct appeal, *see United States v. Frady*, 456 U.S. 152, 165 (1982), and that a federal prisoner cannot use a § 2255 motion to litigate questions that could have been raised on direct appeal but were not, *see Rosario v. United States*, 164 F.3d 729, 732 (2d Cir. 1999). Thus, where a defendant

---

[5] The Second Circuit has granted the Government's petition for rehearing *en banc* in *Scott*. The case was argued on November 6, 2020, and is currently under advisement with the Second Circuit.

has procedurally defaulted a claim by failing to raise it on direct appeal, the claim may be raised under § 2255 only if the defendant "can first demonstrate either 'cause' and 'actual prejudice,' or that he is 'actually innocent.'"  *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted).

The Supreme Court has made clear that "cause" is measured by a stringent standard of diligence.  *See, e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("Cause" is "something external to the petitioner" which "cannot be fairly attributed to him").  To demonstrate cause, a defendant must show "some objective factor external to the defense," *Murray v. Carrier*, 477 U.S. 478, 488 (1986), such as a claim that "is so novel that its legal basis [was] not reasonably available to counsel" and kept him from raising the claim on direct appeal before a particular court, *Reed v. Ross*, 468 U.S. 1, 16 (1984).  Novelty, however, "cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'"  *Bousley*, 523 U.S. at 623 (citation omitted); *see id.* at 622-23 (a claim was not "novel" where judicial decisions in the federal reporters adjudicating claims show that the legal basis for the claim was "reasonably available").

"The 'prejudice' requirement is met by establishing 'actual prejudice resulting from the errors of which Petitioner complains.'  The error must have resulted in 'substantial disadvantage, infecting the entire trial with error of constitutional dimensions.'"  *Gutierrez v. Smith*, 702 F.3d 103, 112 (2d Cir. 2012) (quoting *Frady*, 456 U.S. at 168 and *Murray*, 477 U.S. at 494).  In the guilty plea context, a defendant must demonstrate that his plea was infected with a fundamental error "which inherently result[ed] in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure."  *United States v. Timmreck*, 441

13

U.S. 780, 783 (1979).  To establish actual prejudice, the defendant must show that he would not have pled guilty had he known of the error.  *Id.* at 784 (habeas petitioner alleging a violation of Rule 11 cannot show that the error "resulted in a 'complete miscarriage of justice' or in a proceeding 'inconsistent with the rudimentary demands of fair procedure'" when he does not argue that "if he had been properly advised by the trial judge, he would not have pleaded guilty"); *Lucas v. United States*, 963 F.2d 8, 13 (2d Cir. 1992) (prejudice can be established by demonstrating that the defendant "did not understand the consequences of his plea, or that, if he had been properly advised, he would not have pled guilty").

If a defendant cannot demonstrate "cause" for and prejudice from his procedural default, he can attempt to obtain review for his claim by establishing "that a fundamental miscarriage of justice would result from a failure to entertain the claim."  *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991).  The Supreme Court has repeatedly emphasized that by the term "fundamental miscarriage of justice," it means the "actual innocence" of the defendant.  *See Herrera v. Collins*, 506 U.S. 390, 404 (1993) (referring to rule requiring "proper showing of actual innocence" as the "fundamental miscarriage of justice exception" and explaining that the purpose of the exception is "to see that federal constitutional errors do not result in the incarceration of innocent persons").  Furthermore, "'actual innocence' means factual innocence, not mere legal insufficiency."  *Bousley*, 523 U.S. at 623 (internal citation omitted).

Jackson argues that he did not raise his vagueness challenge because the legal basis was not available until the *Johnson* decision.  (Def. Mem. at 14.).  This is incorrect.  "Cause" in this context requires an external impediment to raising the claim, not merely a failure to recognize the

14

argument or even a belief that the argument would fail. *See Bousley*, 523 U.S. at 623. Before his guilty plea and sentence in 1999, numerous other litigants had raised vagueness challenges to other aspects of § 924(c). *See, e.g., United States v. Magee*, 21 F.3d 1108, 1994 WL 171513, at *4 (5th Cir. Apr. 22, 1994) (unpublished decision) (considering and rejecting vagueness challenge to § 924(c)'s use of the term "drug trafficking crime"); *United States v. Santos*, No. S 91 Cr 724, 1992 WL 232057, at *8 (S.D.N.Y. Sept. 2, 1992) (considering and rejecting vagueness challenge to § 924(c)'s use of the terms "firearm silencer" and "firearm muffler"). By the time of Jackson's plea and sentencing, litigants were also raising vagueness challenges to § 924(c)'s definition of "crime of violence" itself. *See, e.g., United States v. Bennett*, 165 F.3d 36, 1998 WL 781231 (9th Cir. Nov. 9, 1998) (unpublished decision) (considering and rejecting vagueness challenge as to § 924(c)'s definition of "crime of violence" insofar as that definition was interpreted to encompass possession of a firearm silencer). Particularly given that the Supreme Court had never, in a holding or dicta, either expressly or impliedly, rejected a vagueness challenge to § 924(c)'s risk-of-force clause, Jackson lacks any cause for having failed to appeal on that ground.

Even if Jackson could establish cause for his default—which he cannot—Jackson cannot demonstrate prejudice. Jackson cannot meet this burden because he cannot credibly claim that he would not have pled guilty had Counts 77 and 80 been based solely on the murder predicates. The recent Second Circuit opinion in *United States v. Dussard*, 967 F.3d 149 (2d Cir. 2020) rejecting a *Davis* challenge in light of valid alternative predicate supports denial of Jackson's motion. The defendant in *Dussard* was charged with Hobbs Act robbery conspiracy, narcotics conspiracy carrying a 10-year mandatory minimum penalty, and firearms offenses under 18 U.S.C. § 924(c)

15

predicated on both the charged Hobbs Act robbery conspiracy and the charged narcotics conspiracy. Dussard pled guilty pursuant to a plea agreement to Hobbs Act robbery conspiracy and to violating § 924(c) based on the Hobbs Act robbery conspiracy predicate. Following the decisions in *United States v. Davis*, 139 S. Ct. 2319 (2019), and *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019), a Hobbs Act conspiracy is no longer a crime of violence within the meaning of § 924(c), and Dussard sought vacatur of his § 924(c) conviction. On plain error review, the Circuit affirmed the § 924(c) conviction, holding that the *Davis* error did not affect the defendant's substantial rights. *Dussard*, 967 F.3d at 151.

Several aspects of *Dussard* are worth emphasizing in light of Jackson's motion. *First*, on plain error review, the defendant had the burden to show a reasonable probability that he would not have pleaded guilty to the § 924(c) count based on the narcotics conspiracy predicate, which of course remains valid after *Davis*. *Id.* at 156-58. *Second*, in evaluating the defendant's challenge, the Circuit considered the record as a whole, including not only the indictment, plea agreement, and plea colloquy, but also the uncontested facts in the PSR and the sentencing proceeding. *Id.* *Third*, in light of the evidence of the defendant's participation in the narcotics conspiracy and the possession of a firearm in furtherance of that conspiracy (again, based on the record as a whole, and not limited to the defendant's admissions at the guilty plea), together with the substantial benefits he received under the plea agreement in the form of lower sentencing exposure, the defendant failed to carry his burden of showing a reasonable probability that he would not have pleaded guilty to a § 924(c) count properly predicated on the narcotics conspiracy. *Id.* at 158.

16

Because the facts and procedural history of *Dussard* are more favorable to that defendant than Jackson's circumstances here, *Dussard* compels affirmance of Jackson's conviction. Jackson was likewise charged with a § 924(c) firearms offense predicated on a now-invalid crime of violence and a still-valid crime of violence. Jackson appears to argue that, like the defendant in *Dussard*, his plea (at least with respect to Count 77) was only to the now-invalid crime of violence. (*See* Def. Mem. at 7-8).[6] In *Dussard*, the Circuit rejected the defendant's appeal because he could not show that he would not have pled guilty based on a narcotics predicate had the parties known that the crime of violence would be invalidated. *See Dussard*, 967 F.3d at 158. Likewise here, Jackson does not even claim that he would not have pled guilty to the murder predicate alone—instead, he persists in his legally unsupported claim that murder is not a valid predicate to a § 924(c) charge. Moreover, the Government agreed to dismiss the substantive murder charges in Counts 21, 27, and 35, the last of which carried a mandatory life sentence,[7] in exchange for Jackson's guilty plea to offenses with less severe penalties. As Judge Mukasey concluded, Jackson's plea allocution was sufficient to establish his guilt on each Count 27 and 35. *Jackson*, 2002 WL 1968328, at *2 ("Jackson's conduct as he described it could also have resulted in conviction for either conspiracy to commit murder, or—on an aiding and abetting theory—

---

[6] For the reasons discussed above, the record is clear that Jackson's plea encompassed both the murder and murder conspiracy predicates. *See supra* at 8-10. But even if Jackson's argument that he only truly admitted to the murder conspiracy with respect to Count 77 were accepted, that would merely put him in the same position as in *Dussard*.

[7] The penalties associated with 18 U.S.C. § 1959(a)(1) were higher for offenses occurring after September 16, 1994. *See* Violent Crime Control and Law Enforcement Act of 1994, PL 103-322, 108 Stat. 1796 (Sept. 13, 1994).

17

murder."). Against this backdrop, the notion that Jackson would have rejected the Government's plea offer to a 420 month maximum sentence had he known of the purported issues with Counts 77 and 80 strains credulity.

Moreover, *Dussard* was decided on direct appeal under plain error review—meaning that the Circuit required the defendant to show only that he would not have pled guilty had he known of the change wrought by *Davis*. *Dussard*, 967 F.3d at 156. For the reasons set forth above, the Government respectfully submits that Jackson has not demonstrated such prejudice. Moreover, Jackson faces the much more demanding standards applicable to motions under § 2255, which the Supreme Court has counseled should not "do service for an appeal." *Timmreck*, 441 U.S. at 784 (quoting *Sunal v. Large*, 332 U.S. 174, 178 (1979)). "[T]he concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *Id.* Accordingly, not only must Jackson establish that he would not have pled guilty, he must show that the *Davis* error "resulted in a 'complete miscarriage of justice' or [occurred] in a proceeding 'inconsistent with the rudimentary demands of fair procedure.'" *Id.*; *accord Lucas v. United States*, 963 F.2d 8, 14 (2d Cir. 1992) (citing *Timmreck* and noting that it has "long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment" (quoting *United States v. Addonizio*, 442 U.S. 178, 184 (1979)). A review of the record as a whole demonstrates that there was no miscarriage of justice. Rather, the record demonstrates that Jackson was a murderer who, in light of significant evidence against him establishing his guilt on the charges in the Indictment, was motivated to negotiate a disposition carrying a 420 month maximum sentence. *See also Lewis*, 2020 WL 3498710, at *2 (noting, in

18

denying habeas claim, that a showing that the movant would not have pleaded guilty had the § 924(c) charge been predicated only on the narcotics conspiracy charged in Count Two "is necessary to excuse movant's procedural default since . . . *Davis* has no bearing on the Count Two predicate"). Accordingly, under *Dussard*, Jackson's motion to overturn his § 924(c) conviction should likewise be denied for failure to establish prejudice.

Having failed to demonstrate cause and actual prejudice, Jackson can only prevail by establishing actual innocence. Jackson does not attempt to allege that he is actually innocent, but even if he had, his guilty plea allocution—in which he admits to aiding and abetting the murders of Greg Hawkins and Sheila Berry—forecloses this argument.

## Conclusion

For the foregoing reasons, the Court should deny Jackson's motion.

Dated: New York, New York
November 13, 2020

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York

By: Stephanie Lake
Assistant United States Attorney
Tel.: (212) 637-1066

19