```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
UNITED STATES OF AMERICA        :        96-cr-515 (LAP)
                                :
            Plaintiff,          :              ORDER
                                :
            v.                  :
                                :
RAYMOND JACKSON,                :
                                :
            Defendant.          :
-------------------------------x
```

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Raymond Jackson's pro se motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), (dkt. nos. 734 and 769), where he argues primarily that the "anti-stacking" provisions of the First Step Act constitute "extraordinary and compelling" reasons for his release. The Government opposes Jackson's motion. (Dkt. no. 752.) For the reasons set forth below, the motion is denied.

I.    **Jackson's Conduct and Procedural History**

The crimes of which Jackson stands convicted arose out of his membership in a group known as the "Preacher Crew" or the "Family," a criminal organization that operated primarily in Harlem and the Bronx, New York, from in or about 1983 to in or about 1996. (Presentence Report ("PSR") ¶¶ 18-19). The members and associates of the Preacher Crew engaged in criminal activity including murder, assault, extortion, and narcotics trafficking

1

and protected the organization's interests through systematic violence against enemies and perceived enemies. (Id.).

Jackson was involved in multiple murders carried out by the Preacher Crew. (Id. ¶¶ 26- 28). First, in or about January 1994, the Preacher Crew was hired to murder George Ford in order to remove Ford as competition in the PCP business in the vicinity of Bradhurst Avenue in Manhattan. (Id. ¶ 26). One of the leaders of the Preacher Crew chose two other Preacher Crew members to be the shooters who would carry out the murder and ordered Jackson to point out Ford to the shooters. (Id.) Jackson took one of the shooters to a grocery store, where Jackson shook Ford's hand so that the shooter could see who he was supposed to kill. (Id.) After Jackson made the identification, the two selected members of the Preacher Crew shot and killed Ford. (Id.)

Second, in or about April 1994, one of the leaders of the Preacher Crew ordered that Greg Hawkins be murdered in retaliation for Hawkins' having participated in the murder of an associate of the Preacher Crew. (Id. ¶ 27). On the day of the murder, Jackson was driving in a car with other Preacher Crew members when they spotted Hawkins. (Id.) After Jackson obtained a gun, he and other Preacher Crew members drove back to Hawkins' location and stopped the car, at which point Jackson jumped out of the car and started shooting at Hawkins. (Id.) Hawkins tried to run away, but Jackson ran after him and, after Hawkins fell

to the ground, Jackson stood over him and shot him in the head

numerous times. (Id.)

Third, in or about March 1995, members of the Preacher Crew

agreed to murder Sheila Berry. (Id. ¶ 28). Berry was the

girlfriend of a member of the Preacher Crew and also transported

drugs for the Preacher Crew. (Id.) One of the leaders of the

Preacher Crew arranged for Berry to pick up drugs from a

supplier and then agreed with other Preacher Crew members to

murder Berry in order to avoid having to pay the supplier, whom

they falsely planned to tell that Berry had stolen the drugs and

run away with them. (Id.) Members of the Preacher Crew including

Jackson took Berry to an apartment and shot her in the head.

(Id.) Jackson obtained the gun for the murder and helped dispose

of Berry's body in an adjoining abandoned building. (Id.)

On December 17, 1997, Jackson and others were charged in an

eighty-six count Superseding Indictment. (Dkt. no. 193.)

Specifically, Jackson was charged with (1) in Count One,

racketeering, in violation of 18 U.S.C. § 1962(c); (2) in Count

Two, racketeering conspiracy, in violation of 18 U.S.C.

§ 1962(d); (3) in Counts Twenty, Twenty-Six, Thirty-One, and

Thirty-Four, conspiracy to commit murder in aid of racketeering,

in violation of 18 U.S.C. § 1959(a)(5), in connection with the

murders of George Ford, Greg Hawkins, Larry Jones, and Sheila

Berry, respectively; (4) in Counts Twenty-One, Twenty-Seven, and

3

Thirty-Five, murder in aid of racketeering, and aiding and abetting the same, in violation of 18 U.S.C. § 1959(a)(1) and 2, in connection with the murders of George Ford, Greg Hawkins, and Sheila Berry, respectively; (5) in Counts Seventy-Four, Seventy-Seven, and Eighty, using and carrying a firearm during and in relation to a crime of violence, specifically, the conspiracies to murder and murders in aid of racketeering of George Ford, Greg Hawkins, and Sheila Berry, respectively, in violation of 18 U.S.C. § 924(c) and 2; and (6) in Count Eighty-Three, accessory after the fact, in violation of 18 U.S.C. § 3, in connection with dismembering, guarding, and disposing of the remains of Anthony Boatwright after his murder.

On April 5, 1999, Jackson's jury trial began. (Dkt. no. 459.) Two days into the trial, on April 7, 1999, Jackson pleaded guilty, pursuant to a plea agreement, to (1) Count Twenty, charging him with conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5), in connection with the murder of George Ford; (2) Count Seventy-Seven, charging him with using and carrying a firearm during and in relation to a crime of violence, specifically, the conspiracy to murder and murder of Greg Hawkins, in violation of 18 U.S.C. § 924(c) and 2; and (3) Count Eighty, charging him with using and carrying a firearm during and in relation to a crime of

4

violence, specifically, the conspiracy to murder and murder of Sheila Berry, in violation of 18 U.S.C. § 924(c) and 2.

On June 29, 1999, the Court sentenced Jackson to 120 months imprisonment on Count Twenty; 60 months imprisonment on Count Seventy-Seven; and 240 months imprisonment on Count Eighty, all to run consecutively, for a total sentence of 35 years imprisonment.

According to the Bureau of Prisons' ("BOP's") website, Jackson is currently scheduled to be released from custody on February 10, 2027.

## II.  Jackson's Motion for Compassionate Release

In his pro se compassionate release motion, Jackson argues that his sentence should be reduced because the mandatory minimum sentences for multiple convictions under Section 924(c) were "stacked" in his case, a practice prospectively eliminated by Congress in 2018 with the passage of the First Step Act ("FSA"). (Dkt. no. 734 at 3-5.) Accordingly, Jackson points out that, if he were sentenced on the same charges today, he would have been subject to a mandatory minimum sentence of five years, rather than 20 years, with regard to the second Section 924(c) count. (Id.).[1]

_____

[1] On February 1, 2022, Jackson filed a compassionate release motion with the BOP, citing the "stacking" of the Section 924(c) counts in his case. (Dkt. no. 734, Ex. A). Accordingly, the Government does not contest that Jackson (footnote continued)

5

The Government opposes, arguing primarily that the change in the law does not constitute "extraordinary and compelling" reasons and that the 3553(a) factors weigh against release. The Government also responds to Jackson's argument that he would today face a mandatory minimum sentence of five years. The Government writes that this argument assumes, incorrectly, that the Government would have offered Jackson a plea to the same charges today, still dropping the charges of murder in aid of racketeering that carried a mandatory life sentence.

In reply, Jackson argues primarily that he has presented "extraordinary and compelling" reasons and that the Court should take into account U.S.S.G. § S1B1.13(6) which will become effective on November 1, 2023.

## III. Jackson Has Not Established an "Extraordinary and Compelling" Reason for Release

To satisfy the requirements for a sentence reduction pursuant to Section 3582(c)(1)(A), a defendant must demonstrate that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i); see United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020) (district courts can "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for

---

(footnote continued) has exhausted his administrative remedies. See 18 U.S.C. § 3582(c)(1)(A).

compassionate release"). Here, Jackson establishes no "extraordinary and compelling" reason for his release.

As an initial matter, to the extent that Jackson argues that the stacking of Section 924(c) counts in his case was "neither intended nor permitted" by Congress at the time his sentence was imposed, (dkt. no. 734 at 5), the argument is mistaken in light of the non-retroactive nature of the FSA's changes to law. See Rodriguez v. United States, No. 15-CR-445, 2020 WL 8768320, at *2 (S.D.N.Y. Aug. 18, 2020) (rejecting argument that "stacking" of Section 924(c) counts was "unlawful" as to defendant sentenced prior to FSA's enactment and stating that the FSA "is not retroactive to offenses that were final at time of the act's enactment"). While the Court may consider the FSA's elimination of "stacking" for multiple Section 924(c) offenses, the Court of Appeals has made clear that a district court "may look to, but is not bound by, the mandatory minimums that the defendant would face if being sentenced for the first time under revised guidelines or statutes." United States v. Rose, 837 F. App'x 72, 73-74 (2d Cir. 2021).

Although "[t]here is a split of authority on whether the FSA's change in law, by itself, constitutes an 'extraordinary and compelling' circumstance under § 3582(c)(1)(A) to justify reducing a pre-FSA sentence of an offender convicted of a crime which had its mandatory minimum sentence reduced by the FSA,"

courts in this District "have widely recognized that the FSA's

change of law, when combined with other 'extraordinary and

compelling' reasons, can constitute sufficient grounds to

justify a sentence reduction under § 3582." United States v.

Wright, No. 15-CR-445, 2022 WL 134870, at *3 (S.D.N.Y. Jan. 13,

2022). Here, however, Jackson identifies no such other

"extraordinary and compelling" reasons that would warrant a

sentence reduction in his case. See Musa v. United States, 502

F. Supp. 3d 803, 812 (S.D.N.Y. 2020) (denying compassionate

release motion premised, in part, on changes to law in FSA where

"the recent changes in the law support Musa's application, but

. . . discretionary relief is not warranted because Musa has

failed to identify additional, individualized factors justifying

his release").

   Moreover, Jackson's argument assumes that the Government

would have agreed to offer Jackson a plea to the same charges –

and to drop the charges of murder in aid of racketeering that

carried a mandatory life sentence – under the current statutory

regime. However, there is no reason to assume that the

Government would have agreed to drop the most serious charges

against Jackson if doing so meant that he would receive a lesser

sentence than the 35-year sentence actually imposed. See Wright,

2022 WL 134870, at *4 (denying compassionate release motion

premised on Section 924(c) "stacking" where the defendant "faced

charges of murder in aid of racketeering that carried a

mandatory life sentence" and "[t]here is no reason to assume

that, had the parties' plea negotiations occurred after the

effective date of the FSA, that the Government would have agreed

to drop the most serious charges against Wright without

assurance that he would be sentenced to at least 35 years

in  prison"). Jackson's assumption that the Government would

offer the same plea even if Jackson might receive a lower

sentence is especially unfounded in this case, where the parties

stipulated to a sentence of 35 years imprisonment in the plea

agreement. In other words, in agreeing to drop the most serious

charges against Jackson, the Government was assured of the

precise term of imprisonment to which Jackson would be sentenced

for his crimes.

As urged by Jackson in his reply, the Court has considered

U.S.S.G. § 1B1.13(6), to become effective on November 1, 2023.

It provides:

> UNUSUALLY LONG SENTENCES. – If a defendant received an
> unusually long sentence and has served at least 10 years
> of the term of imprisonment, a change in the law (other
> than an amendment to the Guidelines Manual that has not
> been made retroactive) may be considered in determining
> whether the defendant presents an extraordinary and
> compelling reason, but only where such change would
> produce a gross disparity between the sentence being
> served and the sentence likely to be imposed at the time
> the motion is filed, and after full consideration of the
> defendant's individualized circumstances.

See Amendments to the Sentencing Guidelines, April 5, 2023,

Exhibit A.

Jackson argues under the "gross disparity" factor that if

sentenced today he would not be subject to the "stacking"

provisions of § 924(A) which "would have reduced [his] mandatory

minimum of 25 years on Count 80 to just five years." (Dkt. no.

769 at 5.) While Jackson is technically correct that a

conviction today on the counts to which he pleaded would most

likely yield a mandatory minimum of five years, as noted above,

the Court is persuaded that the Government would not have

offered a plea with that effect, either in 1999, today, or any

time in between. Based on the Court's over 31 years on the

bench, it is inconceivable that the Government would have made

such an offer to a defendant who participated in the murders,

violence, and drug dealing that Jackson did. Accordingly, even

considering incoming U.S.S.G. § 1B1.13(6), the Court finds that

Jackson has not proffered "extraordinary and compelling" reasons

for release.

## IV.   The 3553(a) Factors Weigh Against Releasing Jackson

Even assuming Jackson had established "extraordinary and

compelling" reasons for release, the 3553(a) factors counsel

against release. As noted above, the nature and circumstance of

Jackson's offenses were exceedingly serious. He participated in

multiple murders in connection with his membership in the

10

Preacher Crew, a criminal organization that operated in Harlem and the Bronx for over thirteen years. The members and associates of that organization engaged in systemic violence against enemies and perceived enemies. Their crimes included not only murder but assault, extortion, and narcotics trafficking. The callous and brutal nature of the murders only underscore the seriousness of Jackson's offenses. For example, the murder of George Ford was committed to remove Ford as competition in the drug business, while the murder of Sheila Berry was committed to avoid having to pay a drug supplier. The nature of circumstances of these offenses, together with the need for just punishment are appropriately satisfied by the 35-year sentence agreed to by Jackson in his plea and originally imposed on him. These factors require that Jackson serve his full sentence.

**V.    Conclusion**

For the reasons set out above, Jackson's pro se motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), (dkt. no. 734), is denied.

The Clerk of the Court shall close the open motions. (Dkt. nos. 734 and 761.) The Clerk of the Court shall mail a copy of this order to Jackson.

12

**SO ORDERED.**

Dated:     New York, New York
           September 15, 2023

_____
       LORETTA A. PRESKA
       SENIOR UNITED STATES DISTRICT JUDGE

12